IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Catherine H. Cameron | ) | |
| | ) | Civil Action No. 8:04-2475-DCN |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **ORDER AND OPINION** |
| | ) | |
| Jo Anne B. Barnhart, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____) | | |

This matter is before the court on Magistrate Judge Bruce H. Hendricks' recommendation that this court reverse the Commissioner's decision denying plaintiff disability insurance benefits ("DIB") and supplemental security income benefits ("SSI") under the Social Security Act (the "Act"). The record includes a Report and Recommendation ("Report") of the United States Magistrate Judge made in accordance with 28 U.S.C. § 636(b)(1)(B).

## I.     PROCEDURAL BACKGROUND

Plaintiff filed an application for DIB and SSI on November 26, 2001 and November 21, 2001, respectively, (Tr. 16), alleging a disability beginning April 6, 2001, due to fibromyalgia, restless leg syndrome, and degenerative disc disease. (Tr. 56.) Plaintiff's application was initially denied and denied again on reconsideration. (Tr. 16.) Plaintiff filed a timely request for a hearing, and Administrative Law Judge Richard L. Vogel (the "ALJ") conducted the hearing and denied plaintiff's application on September 29, 2003. (Tr. 16-25.) The Appeals Council denied plaintiff's request for review on May 27, 2004 (Tr. 7-10), making the ALJ's decision the Commissioner's final decision for

purposes of judicial review.

## II.     PERTINENT FACTS[1]

At the time of the administrative hearing, plaintiff was 38 years old.  (Tr. 275.) She is a high school graduate who worked as a retail clerk and manager.  (Tr. 17.) Plaintiff has been under the care of Dr. Niemer, a licensed rheumatologist, for fibromyalgia, degenerative disc disease, and restless leg syndrome since January 30, 2001 (Tr. 244), when plaintiff was referred to Dr. Niemer by Dr. John Lucas, a neurologist.  (Tr. 130.)[2]  Dr. Niemer described plaintiff as having "multiple trigger points consistent with Fibromyalgia."  (Tr. 241.)  Additionally, plaintiff has been under the care of a neurosurgeon, Dr. Khoury, for her degenerative disc disease.  (Tr. 259.)  She has had several surgeries on her spine (Tr. 261), and she continues to suffer from lower back pain related to the disease.  (Tr. 254.)

Drs. Niemer and Khoury completed separate Physical Capacities Evaluations in March of 2003.  Both doctors described plaintiff's "most reasonable lifting and/or carrying expectation . . . during a normal work day" as five pounds occasionally to one

---

[1] The magistrate judge's Report contains a more thorough recitation of the facts pertinent to this case, including citations to the record, and the court incorporates that recitation into this order.  The facts recounted here provide a basis for the court's ruling but do not necessarily provide all relevant context.  As such, familiarity with the facts from the Report is assumed.

[2] The ALJ initially described Dr. Niemer as a neurosurgeon (Tr. 17) and later as a rheumatologist. (Tr. 20.)  The record suggests that Dr. Niemer is in fact a rheumatologist. Dr. Lucas specifically referred the plaintiff to Dr. Niemer for a "rheumatologic opinion." (Tr. 130.)  Additionally, Dr. Niemer is a physician at Low Country Rheumatology, PA. (Tr. 243.)  There is no evidence in the record to suggest that Dr. Niemer is a neurosurgeon.

pound frequently. (Tr. 188-89.) Both treating physicians stated that during an eight hour work day plaintiff could sit for only four hours, and Dr. Khoury further added that breaks would be needed. (Tr. 188-89.) Dr. Khoury opined that plaintiff could stand or walk for up to four hours (Tr. 188), while in Dr. Niemer's opinion plaintiff would not be able to consistently stand or sit for any period of time during a work day and would require an assistive device to ambulate even minimally in a normal workday. (Tr. 188-89.) Both doctors similarly described plaintiff as being very limited in activities such as pushing or pulling arm or leg controls, climbing stairs, gross manipulation, fine manipulation, bending, reaching, driving, and working with hazardous machinery. (Tr. 188-89.) Dr. Khoury indicated that plaintiff would miss at least two days of work each month because of her impairments or treatment. (Tr. 188.) Dr. Niemer indicated that plaintiff would miss more than four days each month. (Tr. 189.) In his Physical Capacities Evaluation, Dr. Niemer described the cause of plaintiff's restrictions as "severe degenerative disc disease affecting the cervical and lumbar spine, complicated by fibromyalgia and depression." (Tr. 189.)

A third assessment of plaintiff's physical capacity was completed by Dr. Baker, a State agency medical consultant who performed a Physical Residual Functional Capacity Assessment. (Tr. 178.) In Dr. Baker's opinion, plaintiff's capabilities were greater than Drs. Khoury and Niemer had determined. (Tr. 178-85.) While the record is not clear on Dr. Baker's role in plaintiff's medical care, it seems that Dr. Baker did not provide recurring treatment to plaintiff, as the only file from Dr. Baker is the Physical Residual Functional Capacity Assessment (Tr. 178.)

A vocational expert, Dr. Brabham, testified that a person with the same educational and work background as plaintiff who also had an "exertional capacity" for light work with limitations on climbing, crawling, kneeling, crouching, stooping, balancing, and exposure to heights or hazardous machinery was able to perform a number of light jobs that exist in our economy. (Tr. 300-01.) However, when the hypothetical included a weight limitation of no greater than five pounds and an absence from work of at least two days a month, the vocational expert stated that such a person would no longer have the ability to do any job. (Tr. 304.)

### III.    SCOPE OF REVIEW

This court is charged with conducting a <u>de novo</u> review of any portion of the magistrate judge's Report and Recommendation to which a specific, written objection is made. 28 U.S.C.A. § 636(b)(1). A party's failure to object is accepted as agreement with the conclusions of the magistrate judge. <u>See</u> <u>Thomas v. Arn</u>, 474 U.S. 140 (1985). This court is not required to review, under a <u>de novo</u> standard, or any other standard, the factual findings and legal conclusions of the magistrate judge to which the parties have not objected. <u>See id.</u> at 149-50. A party's general objections are not sufficient to challenge a magistrate judge's findings. <u>Howard v. Secretary of Health & Human Servs.</u>, 932 F.2d 505, 508-09 (6th Cir. 1991). The recommendation of the magistrate judge carries no presumptive weight, and the responsibility to make a final determination remains with this court. <u>Mathews v. Weber</u>, 423 U.S. 261, 270-71 (1976). This court may accept, reject, or modify the Report and Recommendation of the magistrate judge, in whole or in part, or may recommit the matter to her with instructions for further

consideration. 28 U.S.C.A. § 636 (b)(1).

Although this court may review the magistrate judge's recommendation <u>de novo</u>, judicial review of the Commissioner's final decision regarding disability benefits "is limited to determining whether the findings of the [Commissioner] are supported by substantial evidence and whether the correct law was applied." <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). "Substantial evidence" has been defined as

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

<u>Id.</u> (internal citation omitted). "[I]t is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the [Commissioner] if h[er] decision is supported by substantial evidence." <u>Id.</u> Instead, when substantial evidence supports the Commissioner's decision, this court must affirm that decision even if it disagrees with the Commissioner. <u>Blalock v. Richardson</u>, 483 F.2d 773, 775 (4th Cir. 1972). "Ultimately, it is the duty of the administrative law judge reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence." <u>Hays</u>, 907 F.2d at 1456.

## **IV.     DEFENDANT'S OBJECTIONS**

The Commissioner claims that the magistrate judge exceeded the scope of judicial review and re-weighed the evidence in the case. First, the Commissioner argues that the ALJ's decision to give little weight to the opinions of Dr. Khoury and Dr. Niemer was legally correct and supported by substantial evidence. Second, the Commissioner argues

that the magistrate judge was incorrect in determining that the ALJ erred in finding plaintiff's testimony not credible. Third, the Commissioner rejects the magistrate judge's determination that the ALJ erred by not accepting the testimony of the vocational expert in response to limitations stated by Drs. Niemer and Khoury's limitations. Finally, the Commissioner claims that the reversal of the decision for payment of benefits is not warranted, and that the appropriate remedy if this court cannot affirm the decision below would be to remand the case to the Commissioner for further proceedings.

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520 (West 2003). If an individual is found "not disabled" at any step, further inquiry is unnecessary.[3] Id. at § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. at § 404.1520(b). If the claimant is not, the second inquiry is whether the claimant suffers from a severe impairment. Id. at § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. at § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. at § 404.1520(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v.

---

[3] A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A) (West 2003).

Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering the claimant's remaining physical and mental capacities and the claimant's age, education and prior work experience. 20 C.F.R. § 404.1520(f) (2000); McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983). The Commissioner must establish two things: (1) that the claimant, considering his or her age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

For the purposes of this order, the first four inquiries are not in dispute. The only question is whether the ALJ correctly assessed plaintiff's remaining physical and mental capacities on his way to determining plaintiff could still perform other forms of gainful activity. Specifically, the question is whether the ALJ should have given controlling weight to Dr. Niemer and Dr. Khoury's opinions of plaintiff's functional capacity.

a. The ALJ improperly disregarded the opinions of Drs. Niemer and Khoury, plaintiff's treating physicians

In the Fourth Circuit, "a treating physician's opinion on the nature and severity of the claimed impairment is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) (citing 20 C.F.R § 416.927). Further, the weight that is to be given to a treating physician's opinion is governed by Social Security Ruling No. 96-2p, which sets

out a four-part test:

> (1) The opinion must come from a "treating source," as defined in 20 C.F.R. 404.1502 and 416.902.
>
> (2) The opinion must be a "medical opinion." Under 20 C.F.R. 404.1527(a) and 416.927(a), "medical opinions" are opinions about the nature and severity of an individual's impairment(s) and are the only opinions that may be entitled to controlling weight.
>
> (3) The adjudicator must find that the treating source's medical opinion is "well-supported" by "medically acceptable" clinical and laboratory diagnostic techniques.
>
> (4) Even if well-supported by medically acceptable clinical and laboratory diagnostic techniques, the treating source's medical opinion also must be "not inconsistent" with the other "substantial evidence" in the individual's case record.

Social Security Ruling 96-2p. The ruling goes on to explain the term "not inconsistent" to mean that the opinion "need not be supported directly by all of the other evidence (i.e., it does not have to be consistent with all the other evidence) as long as *there is no other substantial evidence in the case record that contradicts or conflicts with the opinion*." Id. (emphasis added). The fourth element of the controlling weight inquiry is the point of contention between the parties because the ALJ found Dr. Niemer's opinions to be "totally contradictory to his findings of good strength and full range of motion of the neck . . . [and] no new changes in the spine." (Tr. 16.) As a result, the ALJ did not give Dr. Niemer or Dr. Khoury's diagnosis controlling weight. (Tr. 16.)

This court agrees with the magistrate judge that there is substantial supportive evidence for the opinions of plaintiff's treating physicians. In his decision, the ALJ ignored plaintiff's history of symptoms consistent with fibromyalgia and her treating

physicians' diagnosis.  The ALJ determined that Dr. Niemer's opinions in the Physical Capacity Evaluation were "totally contradictory to his findings of good strength and full range of motion of the neck" and found that Dr. Niemer's statement that there were "no new changes in the spine" supported this conclusion.  (Tr. 21.)  The ALJ further noted that Dr. Niemer's office notes mentioned no physical restrictions on plaintiff.  The ALJ concluded his consideration of Dr. Niemer's opinions by stating that the doctor's findings seem to be based on plaintiff's subjective complaints rather than his own objective findings.  (Tr. 21.)  The ALJ's decision to disregard Dr. Niemer's opinions is erroneous, as he selectively cited to certain portions of plaintiff's medical records while ignoring those parts of the medical records which are actually relevant to a diagnosis of fibromyalgia and degenerative disc disease.

As the magistrate judge noted in her Report, the diagnosis of fibromyalgia is based on a subjective medical examination.  (Report at 9.)  Because the symptoms of fibromyalgia are "entirely subjective" and there are "no laboratory tests for [its] presence or severity," Sarchet v. Chater, 78 F.3d 305, 306 (7th Cir. 1996), the ALJ erred in rejecting the treating physicians' opinions due to a lack of objective supporting evidence. The ALJ failed to recognize the distinction between objective medical evidence of a condition that could reasonably produce the pain, which is required, versus objective evidence of the existence of the pain itself or its severity.  See Walker v. Bowen, 889 F.2d 47, 49 (4th Cir. 1989).  There need not be "objective documentation of [fibromyalgia] (other than the plaintiff's complaints) before there is a medically

9

determinable impairment." Priest v. Barnhart, 302 F.Supp.2d 1206 (D. Kan. 2004).

Dr. Niemer has been plaintiff's treating specialist for several years and has regularly examined her. (Report at 10.) His treatment notes over this several year period document plaintiff's history of widespread pain, poor sleep, depression, and low energy, which are all consistent with the diagnosis of fibromyalgia. (Report at 10.) Plaintiff has tenderness in the trigger points associated with fibromyalgia, (Tr. 243), which, along with a history of widespread pain, is the most commonly accepted form of diagnosing the disease. (Report at 9.)

The ALJ similarly discredited Dr. Khoury's medical opinion due to a perceived lack of objective evidence to substantiate his opinion, focusing on the fact that Dr. Khoury had seen the claimant infrequently since her surgery. (Tr. 20.) The last record of a visit to Dr. Khoury by plaintiff was in February of 2003, when the ALJ noted that "no surgery was contemplated." (Tr. 20.) The ALJ completely ignored the MRIs and x-ray report dated November 16, 2001 showing that plaintiff still had degenerative disc disease problems in her back after her second surgery. (Tr. 226.) Additionally, an MRI taken on October 24, 2002 showed that plaintiff had further degenerative changes in her spine. (Tr. 255.) This court agrees with the magistrate judge's determination that because plaintiff was under the regular care of Dr. Niemer, and there was no further surgery being considered, the fact that plaintiff saw her neurosurgeon infrequently is not indicative of the fact that she was not in pain. (Report at 10.)

Substantial evidence does not support the determination of the ALJ that the

opinions of Dr. Niemer and Dr. Khoury are not entitled to controlling weight. There is no persuasive contradictory evidence in the record to discredit Drs. Niemer and Khoury's opinions, and there is substantial supportive evidence of these treating physicians' opinions. The fact that both Dr. Niemer and Dr. Khoury agreed that plaintiff's impairments are caused by fibromyalgia and, on separate occasions, described similar physical limitations, is corroborative of plaintiff's allegations of pain. See Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir. 1985).

In his decision, the ALJ ignores the subjective nature of fibromyalgia, determining that Dr. Niemer's opinion is not credible because it "is based on [plaintiff's] subjective complaints and not on his own objective findings. (Tr. 21.) He ignored plaintiff's long history of symptoms indicative of fibromyalgia and did not accord Dr. Niemer's opinions the proper weight.[4] Drs. Niemer and Khoury's opinions meet the criteria under Mastro and Social Security Ruling 96-2p, and their diagnosis should have been given controlling weight.

b.      The ALJ erred in disregarding the credibility of plaintiff's testimony

Because plaintiff's fibromyalgia diagnosis depends so heavily on subjective symptoms, a credibility determination is a "critical factor" in the Commissioner's decision. Basinger v. Heckler, 725 F.2d 1166, 1170 (8th Cir. 1984). The ALJ must

---

[4] Dr. Niemer's opinion is to be given great weight because he is a specialist in the area of rheumatology, the relevant specialty for fibromyalgia. See Jordan v. Northrop Grumman Corp. Benefit Plan, 370 F.3d 869, 873 (9th Cir. 2004). More weight is to be given to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist. 20 C.F.R. § 416.927(d)(5)

"explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Id. ( quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983). Courts judging from a record have reason to be hesitant to overturn credibility judgements by ALJ's. Some deference is owed to the ALJ's credibility determinations as the trier of fact; they are in a better position than the reviewing court to evaluate witness testimony. See e.g., Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 801 (10th Cir. 1991). This deference is not controlling in the present case.

The ALJ based his credibility determination on plaintiff's descriptions of the activities that she is able to engage in on her "good days", (Tr. 19), as well as the testimony she gave regarding the end of her employment. Plaintiff testified that on her good days, she is able to shop, eat out, help with household chores, care for her daughter, drive to appointments, and walk. Additionally, she was able to engage in some crafts with her daughter, read to her daughter, and cook her own meals. (Tr. 19.) The ALJ stated that plaintiff's description of her activities is a "fairly active and varied lifestyle and is not indicative of a significant restriction of activities or constriction of interests." (Tr. 20.)

In coming to this conclusion, the ALJ ignores the fact that plaintiff's descriptions of these activities concern only her good, or "better," days. (Tr. 283.) Plaintiff testified during the hearing that she has "a lot more bad days than good days" and estimated that she is able to function, at least somewhat, only two or three days a week in the winter and three or four days a week in the summer. (Tr. 284.) Plaintiff testified that on her bad days she is basically bedridden, getting up only to use the bathroom. (Tr. 283.)

Additionally, plaintiff testified that after having an active day, she'll be in pain and have to spend the next day lying down. (Tr. 284.)

It is clear that when considered as a whole, plaintiff's testimony regarding her daily activities portrays a very limited lifestyle. The ALJ's conclusion that plaintiff's descriptions are of an active and varied lifestyle are without substantial evidence, and this court agrees with the magistrate judge's determination that the limitations which plaintiff testified to are reasonably consistent with the medical evidence and the conditions from which she suffers.

Other evidence in the record relevant to determining the credibility of plaintiff's complaints and her treating physicians' opinions includes her work history. A claimant's strong work history adds substantially to their credibility regarding their own employment capabilities. Nanny v. Matthews, 423 F.Supp. 548, 551 (E.D.Va. 1976), citing Vitek v. Finch, 438 F.2d 1157, 1159 (4th Cir. 1971). Plaintiff clearly has a steady work history, having worked for the same employer, CVS Pharmacies, for almost 12 years, from May of 1989 to April of 2001. (Tr. 94.) While at CVS, plaintiff was promoted to a management position. (Tr. 94.) Prior to working at CVS, plaintiff worked at Rite Aid for over three and a half years, and she held a management position at that job as well. (Tr. 94.) Plaintiff testified that her employment at CVS ended because her health problems caused her to miss too much time from work. (Tr. 276-78.) The ALJ stated that plaintiff "did not stop working due to pain or limited functional ability," basing this decision on the fact that plaintiff was fired for being late for work. (Tr. 19.) As the magistrate judge correctly noted, plaintiff's termination from work stemmed from

her health condition, as she was unable to work the requisite number of hours and came late to work as a result. (Report at 12.) After taking a lower, non-management position with the company in the hopes that it would be easier on her body, plaintiff was unable to meet the demands of her job and was fired. (Tr. 278.) The record lacks substantial evidence to support the ALJ's finding that plaintiff did not stop working due to pain or limited functional ability.

Plaintiff's testimony regarding her symptoms and limitations is supported by the medical evidence of her impairments. This court agrees with the magistrate judge's determination that the ALJ erred in finding plaintiff's testimony as to her limitations is not credible, as her testimony is not inconsistent with the rest of the record.

c.  <u>The ALJ erred by not accepting the testimony of the vocational expert in response to the treating physicians' limitations.</u>

In her Report, the magistrate judge found that the ALJ erroneously disregarded the testimony of the vocational expert based upon the limitations of the treating physicians, Drs. Niemer and Khoury. The ALJ's determination was based on the testimony of the vocational expert after the following hypothetical was posed:

> [an] individual the same age as the claimant, with the same educational and work background containing an exertional capacity for light work with the following limitations. No climbing or crawling, occasional kneeling, crouching, stooping and balancing. Infrequent overhead reaching bilaterally. Sit/stand option. No exposure to heights or hazardous machinery. And finally, doctor, unskilled work in a low stress, non-production rate environment. In your opinion, would there be jobs for such a hypothetical person?

(Tr. 23.) The vocational expert determined that according to the above hypothetical there

would be jobs available for a person with those limitations, such as machine tenders, assembly fabricators, and bench hand workers. (Tr. 302-02.) As the magistrate judge noted, however, the vocational expert's opinion on potential job opportunities changed when the hypothetical included a weight limitation of no more than five pounds and an additional limitation that the individual might miss just two days a month. Under that scenario, the vocational expert testified:

> If . . . she's going to miss a couple of days a month, you're talking five weeks, I believe . . . you're not going to be getting five weeks vacation in these unskilled production jobs I cited . . . I think it would preclude the ability to do these jobs, and I'll even go to the next step and say five weeks out of work would preclude the ability to do any jobs.

(Tr. 304.) Because the ALJ disregarded the opinions of Dr. Niemer and Dr. Khoury, he also disregarded the vocational expert's testimony that included the restrictions based on those opinions. As noted above, this court agrees with the magistrate judge's determination that the ALJ erred in rejecting the opinions of the treating physicians, Drs. Niemer and Khoury. Because the ALJ should have accepted the treating physicians' opinions as controlling, he additionally should have considered the vocational expert's testimony concerning the limitations of Dr. Niemer and Dr. Khoury.

The purpose of a hypothetical question is to give the vocational expert "a set of limitations that mirror those of the claimant." Roe v. Chater, 92 F.3d 672, 676 (8th Cir. 1996). A vocational expert's opinion must be "based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989) (citation omitted). Because the ALJ erred in rejecting the testimony of Dr. Khoury

15

and Dr. Niemer as well as the limitations testified to by plaintiff, it was error to disregard the testimony of the vocational expert based upon these limitations.

d.      The magistrate judge did not err in reversing the Commissioner's decision denying plaintiff's application.

The Commissioner argues that if this court concludes that it cannot affirm the ALJ's decision, the court should remand the case to the Commissioner for further proceedings. (Def.'s Ob. at 7.) This court disagrees. "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405. Furthermore, Fourth Circuit precedent holds that it is "appropriate to reverse without remanding where the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." Breeden v. Weinberger, 493 F.2d 1002, 1012 (4th Cir. 1974) (internal citations omitted). This court finds that both circumstances are present in this case, and it "will not delay the case further by remanding to the Secretary on this issue." Id.

## V.      CONCLUSION

For the reasons stated above and in the magistrate judge's Report and Recommendation, it is therefore **ORDERED** that the Commissioner's decision be **REVERSED** pursuant to sentence four of 42 U.S.C. § 405(g), and judgment be entered for plaintiff, with directions to the Secretary to pay her the benefits to which she is entitled under the law and the regulations.

**AND IT IS SO ORDERED.**

_____
**DAVID C. NORTON
UNITED STATES DISTRICT JUDGE**

**September 27, 2005
Charleston, South Carolina**